United States District Court
Southern District of Texas
**ENTERED**
December 28, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROLISHA D. GOINS, § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-24-3248 |
| § | |
| CLEAR CREEK INDEPENDENT § SCHOOL DISTRICT, *et al.*, § § | |
| Defendant. § § | |

**MEMORANDUM AND OPINION**

Rolisha Goins sues her former employer, the Clear Creek Independent School District, alleging racial discrimination and retaliation. Ms. Goins, an African-American woman, worked at Westbrook Intermediate School as a teacher and coach between August 2016 and July 2023. After she was notified that the Westbrook Board of Trustees voted to propose the non-renewal of her employment contract, Ms. Goins resigned from her role. Ms. Goins sues the District, Westbrook's principal, Stephanie Cooper, and former District Assistant Superintendent of Human Resources, Dr. Casey O'Pry, under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981, alleging race discrimination, retaliation, and constructive discharge. Both Cooper and O'Pry are Caucasian.

The District, Cooper, and O'Pry move to dismiss Ms. Goins's amended complaint for failure to state a claim upon which relief can be granted. (Docket Entry No. 13). Ms. Goins filed an untimely response to this motion. (Docket Entry No. 18). The defendants move to strike Ms. Goins's response as untimely. (Docket Entry No. 19).

Based on the pleadings, the motion, and the applicable law, the court grants the motion to dismiss Ms. Goins's claims against all the defendants. The court denies the motion to strike Ms. Goins's complaint. The reasons for these rulings are explained below.

I.  **Background**

Ms. Goins's employment with the District began in August 2016. (Docket Entry No. 10 ¶ 8). She was assigned to work at Westbrook. (*Id*.). On March 7, 2023, O'Pry informed her that she was to be placed on administrative leave without pay pending an investigation because she had left campus early during work hours on several occasions. (*Id*. ¶ 9). She was informed that during her administrative leave, she could not enter the building or make contact with any Westbrook students or personnel. (*Id*.). On March 28, the HR told Ms. Goins that a recommendation would be made to the District's Board of Trustees to not renew her contract. (*Id*. ¶ 10). HR also told her that she could, in the alternative, choose to resign and avoid this recommendation. (*Id*.).

On April 24, the Trustees met to discuss whether Ms. Goins's contract should be renewed. (*Id*. ¶ 11). Ms. Goins appeared at this meeting and opposed the recommendation made to non-renew her contract "as a continuing act of retaliation and discriminatory treatment based on race, color, and sex." (*Id*.). She also alleges that she "addressed the ongoing harassment and hostile work environment she experienced at Westbrook Elementary School due to the direct effects of [Cooper]." (*Id*.).

On May 11, Ms. Goins requested permission to pick up her personal items from her classroom. (*Id*. ¶ 12). The District informed her that she could not collect her items directly, but that the items would be boxed up for her and brought to the parking lot of one of the school's buildings. (*Id*.). Ms. Goins alleges that when she received the boxes, some items that did not

2

belong to her were included, and some items that did belong to her, such as staplers or hole punchers, which she had purchased with her own funds, were not included. (*Id*.).

On May 15, the Board notified Ms. Goins that it had voted to propose nonrenewal of Ms. Goins's contract. (*Id*. ¶ 13). The Board's letter informed her that she had 15 days to request a hearing on the proposed nonrenewal. (*Id*.). Ms. Goins requested a hearing, which the Board set for June 19. (*Id*. ¶¶ 13,14). Ms. Goins objected to this date because it fell on the Juneteenth holiday. (*Id*. ¶ 15). Upon Ms. Goins's request, the hearing was rescheduled for July 19. (*Id*.). On June 23, the District again suggested to Ms. Goins that she voluntarily resign rather than face a vote on the nonrenewal of her contract. On the same day, Ms. Goins made another request to the District that it return her remaining belongings. (*Id*.). "[U]nder pressure," Ms. Goins opted for voluntary resignation to avoid the difficulties that vote of nonrenewal would cause in her search for future employment. (*Id*. ¶¶ 15-17).

Ms. Goins resigned on June 27. (*Id*.). Ms. Goins alleges that the District required her to waive her right to file a discrimination charge as a condition of her voluntary resignation. (*Id*. ¶ 18). Ms. Goins states that on July 11, she learned that the District had accepted her resignation. (*Id*. ¶ 20). On July 17, she was told she could schedule a pick-up of her remaining personal items from the District. (*Id*. ¶ 21). She picked up the items on July 19. (*Id*. ¶ 30).

Ms. Goins alleges that "her forced resignation/termination from [the District] and its acceptance was the result of a pattern of discrimination and ongoing harassment against her based upon race, color, and sex." (*Id*. ¶ 19). She also alleges that she "was consistently treated differently by [] Cooper … [as] compared to her white colleagues in a continuous scheme of separate incidents and acts with the same goal of creating pretexts to terminate and/or remove Plaintiff from her position." (*Id*. ¶ 19). As examples, she alleges that she was: (1) "sanctioned or written up for"

3

using her computer or cell phone for personal use during the school day, or running personal errands during "a conference break;" and (2) wrongly sanctioned and ultimately terminated for leaving the school's campus 10 to 15 minutes early on several occasions to referee basketball games, which white colleagues regularly did without punishment. (*Id*. ¶¶ 22, 29). Ms. Goins also alleges that Ms. Cooper created a hostile work environment by: (1) "baseless[ly]" accusing her of having an inappropriate relationship; (2) requesting that Ms. Goins's fellow teachers "spy on her;" (3) asking the school technology department "track" her school-issued laptop use; and (4) changing or eliminating any positive feedback about her work in written reports. (*Id*. ¶¶ 24-27).

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln*

*v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

#### A. Threshold Issues

The defendants move to strike Ms. Goins's response as untimely. (Docket Entry No. 19). Because the defendants filed their motions to dismiss her first amended complaint on November 5, 2024, her response was due on Tuesday, November 26, 2024. Ms. Goins concurrently filed a motion for leave to file a response and her response itself on December 2, 2024, in violation of the local rules for this district. (Docket Entry No. 18). The defendants also assert that Ms. Goins's counsel did not attempt to confer with counsel before filing the motion for leave or the response itself. *See* S.D. Tex. Local R. 11.4; (Docket Entry No. 19 at 2). Ms. Goins's response states that the response was filed late because of an "inadvertent scheduling error." (Docket Entry No. 18 at 8).

Motions to strike are used to attack "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. Fed. R. Civ. P. 12(f). Such motions are viewed with disfavor and are rarely granted. *See* 5C Charles Alan Wright and Arthur R. Miller, Federal Practice And Procedure § 1380 (3d. ed.). The court denies the motion to strike Ms. Goins's response.

5

Ms. Goins states in her reply that she seeks to "file this response incorporating her prior response and exhibits." (Docket Entry No. 18 at 2). She refers to her prior response to the defendants' motion to dismiss her original complaint. (Docket Entry Nos. 8, 11). The motion to dismiss her original complaint was mooted by the filing of her First Amended Complaint. *See Garcia v. City of Amarillo, Texas*, 2018 WL 6272461, at *1 (N.D. Tex. Oct. 29, 2018) ("[A]n amended complaint, which supersedes the original complaint as the operative live pleading, renders moot a motion to dismiss the original complaint."). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). The court will not consider Ms. Goins's response to the defendants' motion to dismiss her original complaint or any appended exhibits, (Docket Entry No. 8), in deciding the motion to dismiss Ms. Goins's First Amended Complaint, (Docket Entry No. 13).

## B. The Claims Under Title VII

The defendants assert that Ms. Goins's claims under Title VII must be dismissed as untimely. (Docket Entry No. 13 at 14). "To bring a suit under Title VII … a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378 (5th Cir. 2019). "In Texas, a person claiming unlawful discrimination or retaliation must file a charge of discrimination with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Burgess v. Texas Children's Hosp.*, 2018 WL 6266906, at *4 (S.D. Tex. Nov. 30, 2018) (quoting *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007)). The 300-day limitations period "begins to run from the time the complainant knows or reasonably should have known that the challenged act has

6

occurred." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000). A discrimination claim not brought within the filing deadline is time-barred. *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355 (5th Cir. 2013) (per curiam). "[A] motion to dismiss for failure to comply with Title VII's statutory filing period, like other statutes of limitations defenses, is properly decided under Fed. R. Civ. P. 12(b)(6)." *Boone v. Union Carbide Corp.*, 205 F. Supp.2d 689 (S.D. Tex. 2002).

Ms. Goins filed her EEOC charge on April 18, 2024. (*See* Docket Entry No. 10 ¶ 1). Three hundred days before April 18, 2024 is June 23, 2023. The defendants argue that any claims based on conduct that Ms. Goins alleges to have occurred before June 23, 2023 are time-barred. (Docket Entry No. 13 at 15). The defendants argue that the 300-day window to file the EEOC charge began either on the date that the Trustees held a meeting on nonrenewing Ms. Goins's contract, which was April 24. Alternatively, they argue that the 300-day period started on the date that Ms. Goins was informed by letter that the Trustees would propose nonrenewal and suggested that she instead, voluntarily resign, which was May 15. (Docket Entry No. 10 at 15). Ms. Goins's untimely response asserts that it is her voluntary resignation on June 27, after the District "used the threat of a final vote on the nonrenewal" of her teaching contract, that should be considered the adverse employment action. (Docket Entry No. 18 at 6).

The court agrees that Ms. Goins's charge was filed late. The notice that the Trustees would vote to propose nonrenewal is the adverse employment action at issue, particularly given that Ms. Goins has admitted she only resigned to avoid a vote of non-renewal. Although Ms. Goins did not voluntarily resign until June 27, "[t]he operative date from which the limitations period begins to run is the date of notice of the adverse action, not the date the adverse action takes place," *Hartz v. Adm'rs of the Tulane Educ. Fund*, 275 F. App'x at 287 (5th Cir. 2008). That was on May 15,

7

when Ms. Goins received the District's letter. The Supreme Court has rejected the argument that when, as here, a plaintiff is told that his or her contract will not be renewed, the limitations period begins on the last day of employment. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980). Ms. Goin's argument that the limitations period began on June 27, the day she tendered her resignation, is merely a variation on the argument that the Court rejected in *Ricks*.

Goins appears to rely on the continuing-violation doctrine to extend the limitations period. The Fifth Circuit has recognized that the timeline for filing charges with the EEOC may be extended when the plaintiff experienced ongoing discrimination. "Where it is applicable, the continuing violation doctrine applies to excuse the 300-day exhaustion requirement only as to the course of conduct that constitutes that violation." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). "[T]he continuing violation doctrine embraces two types of cases. The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation." *Hendrix v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990).

Ms. Goins asserts that the District's failures, over the course of nine weeks, to return her self-purchased school supplies in a timely fashion are closely related discriminatory acts that should serve to extend the limitations period on her claims. The court disagrees. For an employment action to be considered materially adverse, the plaintiff must demonstrate that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). The District's failure to timely return Ms. Goins's school supplies cannot be said to dissuade a reasonable employee from making or supporting a charge of discrimination. This is

particularly so because Ms. Goins made two requests for the return of the items, once on May 11 and again on June 23, and ultimately received the items. *Compare Kwong v. Christus Health*, 2023 WL 3437302 (S.D. Tex. April 25, 2023) (holding that the plaintiff had experienced a materially adverse employment action where employer repeatedly delayed in returning the plaintiff's personal items over a period of over four months, threatened to destroy them if she did not pick them up by a certain date, and finally shipped them to plaintiff's home where they arrived in damaged condition).

"The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations." *Hendrix*, 911 F.2d at 1103. This second type is inapplicable. Ms. Goins does not allege multiple instances of the Trustees proposing to vote for nonrenewal of her contract over a period of years, but rather only a single instance.

Equitable tolling may serve to extend the filing deadline when a plaintiff alleging discrimination under Title VII fails to file their charge within the 300-day window. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). A plaintiff bears the burden to justify equitable tolling, which courts apply "sparingly." *Granger v. Aaron's, Inc.* 636 F.3d 708, 712 (5th Cir. 2011) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Under Fifth Circuit precedent, three grounds may support equitable tolling in Title VII cases: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's unawareness of the facts giving rise to the claim because the defendant intentionally

concealed them; and (3) the EEOC's misleading the plaintiff about the nature of the rights. *Granger*, 636 F.3d at 712. Ms. Goins fails to state facts that would allow the court to infer that any of these three grounds would apply.

### C. The Claims Under 42 U.S.C. § 1983 and 42 U.S.C. § 1981

#### a. Race Discrimination

Ms. Goins's complaint is construed as alleging both racially disparate treatment as well as a racially hostile work environment in violation of § 1981 and § 1983. (Docket Entry No. 7 ¶¶ 31-40).

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "In a commercial context, in order to establish a prima facie case under § 1981, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004).

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 411 (5th Cir. 2015) (citing *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012)). "One such federal right is conferred by the Equal Protection Clause, which prohibits a state from 'denying to any person within its jurisdiction the equal protection of the laws.'" *Id*. at 412 (quoting U.S. Const. amend. XIV, § 1). In order to "state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege" in her complaint that "[she] received treatment

10

different from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Id.* (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)).

The Fifth Circuit has held that the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Caldwell v. Lozano*, 689 Fed. Appx. 315, 321 (5th Cir. 2017). Where as here, there is no direct evidence of racial animus, the racial discrimination claims under § 1981 and § 1983 are analyzed under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)

Under this framework, Ms. Goins bears the initial burden of establishing a prima facie case of discrimination. For her prima facie case, she must show that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by her employer; and (4) was replaced by someone outside her protected group or was treated less favorably than similarly situated employees outside the protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021). It is undisputed that Ms. Goins is a member of a protected group, was qualified for her position, and suffered an adverse employment action by her employer. The question is whether her complaint alleges facts sufficient to infer that Ms. Goins was treated less favorably than similarly situated white employees.

The court finds that Ms. Goins's allegations fail to satisfy this fourth element. "To show that someone is a comparator, a plaintiff must show that the proffered comparator and the plaintiff: '(1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; (3) have essentially comparable violation histories; and (4)

11

have engaged in nearly identical conduct' that resulted in the adverse employment action at issue." *Thornton v. Univ. of Texas Sw. Med. Ctr.*, 2024 WL 2787886 (N.D. Tex. May 29, 2024) (quoting *Ross v. Judson Indep. School Dist.*, 993 F.3d 315, 322 (5th Cir. 2021)).  Ms. Goins alleges that she wrongly sanctioned and ultimately terminated for leaving the school's campus 10-15 minutes early on several occasions to referee basketball games, for using her computer or cell phone for personal use during the school day, and for running personal errands during "conference breaks." (Docket Entry No. 10 ¶¶ 22, 29).  She alleges that white colleagues regularly did the same and were not disciplined for these actions.  (*Id.*).

These allegations fail to indicate that white employees who left campus early to referee sports competitions were similarly situated to Ms. Goins as to their job titles, supervisors, or disciplinary histories. She alleges only that they were white, part of the coaching staff, and "arrived at the site of the games at the same time."  (Docket Entry No. 10 ¶¶ 29).  Similarly, Ms. Goins's allegations that she was "sanctioned for the same or similar commonplace activity as white colleagues," such as using electronics for personal use or running errands during the school day, provide insufficient detail to infer that the white colleagues in question were similarly situated. Without more, the court cannot infer that any comparators were similarly situated to Ms. Goins. Her prima facie case for racially disparate treatment fails.

> To state a hostile-work-environment claim, a plaintiff must plead facts that could show:
>
> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Daywalker v. Univ. of Texas Med. Branch at Galveston*, 641 F. Supp. 3d 362 (S.D. Tex. 2022) (alterations adopted) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). The

harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and it cannot be "measured in isolation." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

Ms. Goins claims that she "was subjected to unwelcome harassment and discrimination based on her race and color" and that "Defendants' race, color based harassment and discrimination concerned Plaintiff's employment contract, caused a hostile work environment and were [a] continuous pattern of similar acts." (Docket Entry No. 10 ¶¶ 34, 39). She alleges that the District, Cooper, and O'Pry created a racially hostile work environment by falsely accusing her of conducting an inappropriate relationship with a student, requesting that Ms. Goins's fellow teachers "keep tabs" on her, asking the school technology department "track" her school-issued laptop use, and changing or eliminating positive feedback about her work in written reports. (Docket Entry No. 10 ¶¶ 24-27). But "[a]ctionable harassment must involve 'racially discriminatory intimidation, ridicule and insults.'" *Felton v. Polles*, 315 F.3d 470, 475 (5th Cir. 2002) (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). Ms. Goins "has not demonstrated how such harassment has a racial character or purpose." *Narasirisinlapa v. SBC Commc'ns, Inc.*, 2006 WL 832509, at *5 (N.D. Tex. Mar. 29, 2006). Her claims fail as to the third element because she pleads no facts indicating a relationship between her race and the alleged harassment by the District, Cooper, and O'Pry. Taking all of Ms. Goins's allegations as true and

13

drawing reasonable inferences in her favor, she has not alleged facts raising an inference that she was either treated less favorably or harassed because of her race.

### b. Retaliation

Ms. Goins alleges that the District, O'Pry, and Cooper unlawfully retaliated against her for "[c]hallenging and complaining about harassment and discrimination based on race and color." (Docket Entry No. 10 ¶ 44). Fifth Circuit precedent establishes that claims for retaliation under Title VII, § 1981, and § 1983 are analyzed "under the same rubric of analysis." *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019); *see also Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 491 (5th Cir. 2011). "Suit must be brought under Section 1983, however, as Section 1981 does not itself provide for an independent cause of action." *Davis*, 448 Fed. Appx. at 491).

To state a prima facie case for retaliation under § 1981 and § 1983, a plaintiff must plead facts showing that: (1) he engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996). Ms. Goins alleges that the defendants retaliated against her because she "filed a formal complaint of discrimination against [the District] and Cooper on or about May 27, 2021." (Docket Entry No. 10 ¶ 44). She also asserts that she engaged in protected activity by appearing at a public meeting of the District's Trustees in opposition to the recommendation of nonrenewal of her contract, and that the District retaliated against her as a result. (*Id*.).

The defendants assert that Ms. Goins's retaliation claims fail as to causation, because she asserts "no discriminatory, harassing or retaliatory conduct or actions by Defendants between May 27, 2021, and March 7, 2023, when the Plaintiff received notice that she was being placed on administrative leave." (Docket Entry No. 13 at 16). Causation requires the plaintiff to point to

evidence showing that the adverse employment action would not have occurred but-for the protected conduct. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). "At the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 243 (5th Cir. 2019).

Ms. Goins alleges a series of harassing and discriminatory acts, including asking other teachers to spy on her, and writing her up for using her personal devices during the school day. (Docket Entry No. 10 ¶¶ 22-27, 29). However, Ms. Goins asserts only that these acts "occurred over the course of her tenure," which began much earlier than the formal complaint of discrimination that she made on May 27, 2021. (*Id.* ¶ 22). For temporal proximity to serve as evidence of retaliation, the "protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (quotation marks, citation, and alterations omitted). Fifth Circuit precedent establishes that periods of two and a half months, two months, and six and a half weeks are close enough to show a causal connection. *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (collecting cases). Ms. Goins does not allege when these acts occurred in relation to her formal complaint in May 2021. This record does not support an inference of causation.

Ms. Goins also asserts that the statements that she made during the April 24, 2023 hearing—that she opposed the recommendation made to non-renew her contract "as a continuing act of retaliation and discriminatory treatment based on race and color bias"—were protected activity. (Docket Entry No. 18 at 8). She asserts that the defendants retaliated against her by voting to propose nonrenewal on May 15th. (*Id.* at 4). The defendants argue that on March 28,

15

HR told Ms. Goins that the Trustees would receive a recommendation of nonrenewal unless she resigned. (*See* Docket Entry No. 13 at 26; Docket Entry No. 18 at 7). The defendants contend that Ms. Goins "cannot establish retaliation for engaging in protected activity that happened after the decision has been made about an adverse employment activity." (Docket Entry No. 13 at 26 n.4).

"Complaining to supervisors about racial harassment," as Ms. Goins alleges she did during the April 24 hearing, "is a protected activity." *Carrera v. Commercial Coating Servs. Int'l, Ltd.*, 422 F. App'x 334, 339 (5th Cir. 2011). But the court agrees with the defendants that Ms. Goins's allegation that that HR informed her of its plan to recommend proposing nonrenewal on March 28, four weeks before Ms. Goins's complaints of discrimination on April 24, defeats causation. "[A]dverse action before engaging in a protected activity cannot form the basis of a retaliation claim as there is no causal connection between the protected activity and the adverse employment action as necessary to state a claim for retaliation." *Thomas v. Burrows*, 2023 WL 1783694, at *8 (E.D. La. Feb. 6, 2023) (quoting reference omitted). Ms. Goins's retaliation claims fail because she cannot show that her protected activity caused the District, Cooper, and O'Pry to retaliate against her.

### c. Constructive Discharge

Ms. Goins alleges that she was constructively discharged in violation of 42 U.S.C. § 1981 and §1983. She claims that she was "constructively discharged and forced to resign due to Defendants['] continuing course of racially discriminatory acts and harassment." (Docket Entry No. 10 ¶ 49). She further states that she "underwent an [sic] extended period of being banned from her worksite and was ultimately forced to resign from her position." (*Id*. ¶ 52). To state a claim for constructive discharge, Ms. Goins "must allege facts showing that because of [her] race, [she] was subjected to 'working conditions that were so intolerable that a reasonable employee would

have felt compelled to resign.'" *King/Morocco v. Ron Carter Hyundai*, 2019 WL 13468696, at *3 (S.D. Tex. Oct. 2, 2019) (alterations adopted) (internal quotations omitted) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556 (5th Cir. 2001). "A valid hostile work environment claim is a 'lesser included component' of the 'graver' constructive discharge claim. *Equal Emp. Opportunity Comm'n v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *2 (5th Cir. Jan. 5, 2024).

Ms. Goins's claim for constructive discharge fails for the same reason that her claim for hostile work environment fails – because she alleges no facts that would allow the court to infer that she was compelled to resign because of her race. As with her claims for hostile work environment, Ms. Goins "offers only her subjective belief that race was a motivating factor in this dispute, which is insufficient to state a claim for race-based harassment." *Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *11 (N.D. Tex. July 13, 2006), aff'd, 236 F. App'x 936 (5th Cir. 2007)

### d. Qualified Immunity

Because the court finds that Ms. Goins has failed to state a claim upon which relief can be granted as to her claims under Title VII, which must be dismissed as time-barred, and as to her claims under 42 U.S.C. § 1981 and § 1983 for failure to plead all of the required elements, the court does not reach the question of the District's, Cooper's and O'Pry's qualified immunity.

## IV. Conclusion

The court grants the motion to dismiss Rolisha Goins's first amended complaint for failure to state a claim upon which relief can be granted. (Docket Entry No. 13). The court denies the motion to strike the response to the motion to dismiss. (Docket Entry No. 13).

Ms. Goins's claims are dismissed with prejudice, as amendment would be futile. The court will separately enter a final judgment.

SIGNED on December 26, 2024, at Houston, Texas.

                                                             Lee H. Rosenthal
                                        United States District Judge